[Civ. No. 22477. Second Dist., Div. Three. Apr. 3, 1958.]

WILLIAM G. WILLIAMS, Plaintiff and Appellant, v. MAX MIRANDA, Defendant and Appellant; MARY LOUISE MIRANDA et al., Cross-Defendants and Appellants.

R. Norman Wenzell for Plaintiff and Appellant and Cross-Defendants and Appellants.

C. A. Falconer and William D. Spector for Defendant and Appellant.

PATROSSO, J. pro tem.*—We are presented here with separate appeals by the plaintiff and cross-defendants upon the one hand, and by the defendant and cross-complainant on the other, from portions of a decree entered in an action wherein plaintiff sought partition of a parcel of real property.

On September 7, 1943, defendant Max Miranda and cross-defendant Mary Louise Miranda, now Mary Louise Brown, who will hereinafter be referred to as Mrs. Miranda, were husband and wife and the owners as joint tenants of the sub-

*Assigned by Chairman of Judicial Council.

ject property. On that date a divorce action between them being pending, the parties entered into a property settlement agreement which provided among other things that the title to said property should remain in the names of the parties as joint tenants so long as Mrs. Miranda did not remarry and as long as the property was occupied by Mrs. Miranda as a home for herself and the two minor children of the parties, with the proviso that should Mrs. Miranda remarry the property should be sold, both parties agreeing to execute the necessary deeds, and the proceeds derived therefrom should be used for the support and maintenance of said minor children at the rate of $50 per month, and "during the period of time said money is being expended" Mr. Miranda should be relieved from making any further payments for the support of said minor children. Until that time, however, Mr. Miranda agreed to pay $25 per month for the support of the children and further agreed to make the monthly payments of $25 due upon the encumbrance upon said property and to pay when due, all taxes and assessments levied against the property. Thereafter an interlocutory decree was entered in the divorce action followed by an entry of a final decree on October 30, 1944.

On May 2, 1946, Mrs. Miranda instituted an action in the Superior Court of Los Angeles County for the partition of the real property which is the subject of this action. Mr. Miranda appeared in that action, filing an answer and cross-complaint wherein he set forth the terms of the property settlement agreement and prayed a decree that Mr. and Mrs. Miranda held said property in trust for the use and benefit of the minor children in accordance with the terms of the property settlement agreement. In addition, the minor children acting by and through Max Miranda as their guardian *ad litem,* filed a complaint in intervention wherein they alleged substantially the same facts as those set forth in the cross-complaint of Mr. Miranda and prayed a decree that the said property was held in trust by Mr. and Mrs. Miranda for their use and benefit in accordance with the terms of the property settlement agreement. By its finding the court in that action found the facts to be as alleged in the cross-complaint of Max Miranda and the complaint in intervention of the children; and by its judgment decreed that Mrs. Miranda take nothing by her complaint; and that the property was held in trust pursuant to the provisions of the property settlement agreement. An appeal was taken from this

judgment by Mrs. Miranda to the District Court of Appeal where it was affirmed. (*Miranda* v. *Miranda* (1947), 81 Cal. App.2d 61 [183 P.2d 61].)

Following the affirmance of the judgment last mentioned and on January 27, 1948, Mrs. Miranda married one Kelly Brown and on March 26, 1948, she commenced a new proceeding in the superior court for the partition of the property and the termination of the trust. Process in this action was served upon Mr. Miranda and his default for failure to appear was duly entered therein but no further proceeding was had in said action until it was dismissed on July 6, 1956, following the filing of the instant action.

On February 5, 1954, the interest of Mrs. Miranda in the property was sold to the plaintiff for the sum of $1,272.39 at an execution sale upon a judgment obtained against Mrs. Miranda in the Municipal Court of the Los Angeles Judicial District, and on February 14, 1955, the marshal of said court duly issued to plaintiff his deed therefor, following which, on May 5, 1955, plaintiff instituted this action. The only party named as defendant therein is Max Miranda and the complaint is in the customary form of an action in partition alleging that the plaintiff and defendant are the owners as tenants in common of the property in question; that plaintiff has an estate of inheritance therein to the extent of the undivided one-half interest in fee thereof; that the defendant has a similar interest therein; that there are no liens or encumbrances thereon appearing of record and that no person other than the plaintiff and the defendant is interested in said premises as owner or otherwise. The complaint concludes with a prayer for a partition of the property and if partition cannot be had, for a sale thereof and that the proceeds be applied to the payment of the general costs of the action; the payment of reasonable attorney's fees incurred for the common benefit and that the residue be divided equally between the plaintiff and the defendant. Defendant appeared in the action by filing an answer and cross-complaint and in his answer he denies that the plaintiff and defendant are owners as tenants in common of the property; denies that plaintiff has any interest therein and alleges that the legal title thereto, is held by himself and Mrs. Miranda as trustees under the terms of the express trust created by the property settlement agreement, the terms of which are therein set forth. By way of special defense, defendant pleads the judgment rendered in the first partition action hereinbefore mentioned; that the plaintiff is the successor in interest of Mrs. Miranda as to

her interest in the property; that plaintiff is the brother-in-law of the present husband of Mrs. Miranda and that plaintiff and Mrs. Miranda have entered into and are engaged in a conspiracy to defraud the beneficiaries and the defendant of their interest in said property and to circumvent the judgment rendered in the prior partition action; "that to carry out the aforesaid conspiracy the plaintiff herein accepted and received a conveyance of said property, without consideration or with knowledge of the aforesaid trust, and with intent on his part to assist defendant's said former wife in and for said fraudulent purposes, and to hold said property as a secret trust for the use and benefit of defendant's said former wife; that plaintiff has no right, title or interest in and to said property, but holds the same in trust for the use and benefit of the aforesaid express trust; that the within action was brought by plaintiff herein for the purpose of perpetrating the aforesaid fraudulent conspiracy, and in furtherance thereof and for the purpose of harassing defendant and to induce him to agree to a sale of said property and a division of the proceeds of said sale between defendant and defendant's former wife and the plaintiff herein in violation of the terms and provisions of the aforesaid express trust."

By way of another special defense it is alleged "that defendant and plaintiff are the record owners as tenants in common of the property described" and that plaintiff is the owner of the undivided one-half interest therein; that plaintiff has collected rents, issues and profits from said property "since defendant acquired an interest therein" and has failed to account therefor to defendant and that the defendant has a lien thereon or on the proceeds from any sale thereof for one-half of any and all such rents, issues and profits so collected. Defendant further alleges that since he became an owner of such undivided one-half interest in the property he has "expended for the common benefit of all the owners of an interest in and to said property" by way of the payment of taxes for the years 1938 to 1954 both inclusive, in the sum of $907.73; the sum of $2,000 paid on account of the purchase price of the property; that from April 1, 1939, to February 1, 1948, defendant paid on account of the encumbrance on said property the sum of $2,232.50 and that in addition, defendant expended the sum of $513 for attorney's fees and the sum of $488.65 as court costs in the defense of the partition action instituted by Mrs. Miranda hereinbefore referred to, for all of which payments defendant alleges

that he has a lien against the said property or the proceeds from any sale thereof. The answer concludes with a prayer that plaintiff take nothing; that the respective interest of the parties in and to the property be determined; that plaintiff be adjudged to hold the property in trust for the use and benefit of the defendant and the beneficiaries of said trust; that plaintiff be required to account for any and all rents, issues and profits received from said property; that the defendant have a lien upon the said property or upon the proceeds from any sale thereof for the expenditures made by him as alleged in his answer and for attorney's fees incurred in the action.

The cross-complaint wherein, in addition to the plaintiff, Mrs. Miranda and the minor children are named as defendants, alleges substantially the same facts as set forth in his answer and prays for the same relief. In addition, however, defendant therein alleges that since the remarriage of Mrs. Miranda she has refused to sell the property as provided in the settlement agreement although defendant has at all times been ready and willing to do so; that since the remarriage of Mrs. Miranda, defendant has paid the sum of $2,500 for the support and maintenance of the minor children and that he is entitled to reimbursement from the trust estate therefor; that by reason of the alleged conspiracy between Mrs. Miranda and plaintiff to defraud the trust estate, Mrs. Miranda should be removed as one of the trustees of the trust; that neither plaintiff nor Mrs. Miranda have any estate, title or interest in or to the said property and that the defendant is the owner in fee and entitled to the possession thereof.

To the cross-complaint a joint answer was filed by the plaintiff and Mrs. Miranda individually and as guardian *ad litem* for the minor children appearing by the same attorney who represents plaintiff. In this answer the cross-defendants, while admitting the execution of the property settlement agreement previously referred to, deny that a trust was thereby created in favor of the children and that Mr. Miranda was ever a trustee of such trust. Thus, we have the extraordinary situation of counsel purporting to represent minor cross-defendants asserting on behalf of another party to the proceeding an adverse interest to such minors, a position which he consistently maintained upon the trial as he continues to do upon this appeal while still appearing and acting as counsel on their behalf. This matter will be adverted to further in a subsequent portion of this opinion.

During the course of the trial and pursuant to stipulation the real property was ordered sold for the sum of $11,187.37, which sum was deposited with the county clerk to abide the judgment in the action.

The trial court's findings comprise some 15 pages in the clerk's transcript. They are couched in the language of the pleadings and as is not unusual in such situation, they are confusing and in many respects contradictory. However, for the present it may be said generally that they find to be true substantially all of the allegations contained in the defendant's answer and cross-complaint.

From the facts as found, the court made the following conclusions of law: that Mr. Miranda is entitled to judgment against the cross-defendants ''decreeing that he recover and receive from the proceeds of said real property and be reimbursed as follows:

''1. $1,001.65 for attorneys fees and costs incurred and paid in defending the prior action to partition said real property.

''2. $340.58 for one-half of the real property taxes paid by cross complainant on said real property since the remarriage of the co-trustee, cross defendant Mary Louise Miranda.

''3. $2,080.00 as and for one-half of the child support payments paid by Cross Complainant since the said remarriage of the said co-trustee.

''4. $1,290.00 as and for one-half of the rent collected from said real property by Cross Defendants Mary Louise Miranda and William G. Williams since the remarriage of the said co-trustee.

''5. $490.00 for compensation as co-trustee of the express trust created by the co-trustees.

''6. $500.00 for attorneys fees incurred and paid in the defense of the within action and the enforcement of the said express trust.

''7. For removal of the cross defendant Mary Louise Miranda, also known as Mary Louise Brown, as a co-trustee, and the appointment of a new trustee or trustees for the express trust.

''8. For reimbursement for costs of suit incurred and paid herein by Defendant and Cross-Complainant.

''9. For the balance of the proceeds of the sale of said real property to be paid over to and held in trust by the new trustee or trustees during the minority of the minor children

of the co-trustees; the income and corpus to be used for the support and maintenance of said children during their minority at the rate heretofore fixed by the above entitled Court, subject to modification thereof, and Cross Complainant to be relieved therefrom unless and until the said funds are exhausted, and upon the younger child reaching majority, the then remaining balance to be divided equally between and paid over to Cross Complainant and Cross Defendant William G. Williams.

"Plaintiff and Cross Defendant William G. Williams is entitled to judgment for and reimbursement from the proceeds of said sale of said real property in the sum of $392.00 for repairs on the said real property and for $500.00 for attorneys fees herein."

Judgment was entered accordingly and in addition R. Norman Wenzell and C. A. Falconer were thereby appointed as trustees of the trust until the further or different order of the court.

### Appeal of Plaintiff and Cross-Defendant Williams

Plaintiff first contends that the trial court erred in determining that by the terms of the property settlement agreement a valid trust was created in favor of the minor children. This question, however, is no longer an open one. It was directly presented and adjudicated adversely to the plaintiff by the judgment in the first partition action instituted by Mrs. Miranda. Nor is plaintiff in a position to argue, as he does, that the trust was not one for the benefit of the children but for the sole benefit of Mr. and Mrs. Miranda. As said by the District Court of Appeal upon the appeal from the judgment in the prior partition action instituted by Mrs. Miranda:

"In contending that the property settlement did not effect a trust appellant argues that 'no statement nor words are contained in the agreement to indicate an intention to create a trust.' In making such contention appellant is forgetful of the essentials of a valid trust, to wit, a competent trustor, a property, an indicated intention, a definite disposition of the estate, a trustee and a beneficiary. (54 Am.Jur., p. 43, § 30; 65 C.J. p. 231 et seq.; Lefrooth v. Prentice, 202 Cal. 215, 226 [259 P. 947].) In addition to the terms of the traditional valid trust the Legislature in 1929 provided that a trust in relation to real or personal property or both may be made for any lawful purpose. (Civ. Code, § 2220.) The language of the agreement in the instant case provides

(1) a legal purpose, to wit, maintaining the home for appellant and the minor children; (2) an estate, to wit, the home held by the parties as joint tenants; (3) beneficiaries, to wit, appellant and the minor children; (4) a legal term, to wit, the time during which the children would be entitled to support and maintenance from their parents. With all the elements of a legal trust present, the finding that a valid trust was created by the property settlement was supported by the contract of the parties.'' (*Miranda* v. *Miranda*, 81 Cal.App. 2d 61, 67-68 [183 P.2d 61].)

 Plaintiff next contends that the evidence is insufficient to sustain the trial court's finding that plaintiff and Mrs. Miranda entered into a conspiracy to defraud the beneficiaries of their interest in the trust and as a consequence erred in its conclusion that plaintiff was not a bona fide purchaser for value of Mrs. Miranda's interest in the property. We need not, however, pause to consider the validity of the contention with respect to the insufficiency of the evidence to support the finding in question, in view of the further finding that at the time plaintiff became the purchaser of Mrs. Miranda's interest in the property at execution sale, he had knowledge of the existence of the trust thereon in favor of the children and which finding is fully supported by the evidence. The evidence in this regard is to the effect that plaintiff had been on friendly terms with Mrs. Miranda for a number of years and frequently visited her at the home of herself and Mr. Brown. During these visits the trust upon the property was the subject of discussion between the parties upon various occasions as was also the subject of the judgment rendered in the prior partition action instituted by Mrs. Miranda. In view of this evidence, plaintiff is in no position to assert that he was a bona fide purchaser without notice of the existence of the trust. If he did not know the exact terms of the trust, he had knowledge of the facts sufficient to put a reasonably prudent person upon inquiry which if pursued would have disclosed the true state of Mrs. Miranda's interest in the property.

 Plaintiff also complains that the trial court erred in finding that Mr. Miranda was entitled to reimbursement in the sum of $1,001.65, being the amount expended by him for attorney's fees and court costs in defending the prior partition action instituted by Mrs. Miranda because, so it is said, Mr. Miranda was never a trustee of the trust. He argues that since Mr. Miranda ''was a trustor and a beneficiary he could not possibly have been a trustee also.'' No authority is cited

154

in support of this statement and we know of none. ■ On the contrary one may be a beneficiary of a trust as well as the trustee so long, at least, as he is not the sole beneficiary. (*Cahlan* v. *Bank of Lassen County* (1909), 11 Cal.App. 533, 541 [105 P. 765].) ■ And in *Wallace* v. *Riley* (1937), 23 Cal.App.2d 654, 666 [74 P.2d 807], it is said: "There is nothing in the law to disqualify a joint tenant from trusteeship of his interest in the joint property." ■ In view of the fact that the action instituted by Mrs. Miranda, if successful, would have resulted in a judgment that the property was not subject to a trust in favor of the children, the trial court properly awarded Mr. Miranda the expense incurred by him in the successful defense of the action by which the existence of the trust was confirmed. (*Bixby* v. *Hotchkis* (1943), 58 Cal.App.2d 445, 455 [136 P.2d 597].)

■ Plaintiff also contends that the court erred in awarding Mr. Miranda the sum of $340.58 by way of reimbursement for taxes upon the property paid by him subsequent to Mrs. Miranda's remarriage. This contention is well founded. By the terms of the settlement agreement Mr. Miranda agreed to pay all taxes levied or assessed against the property. This portion of the judgment is sought to be sustained only upon the basis of the finding, which is assailed by the plaintiff as unsupported by the evidence, that Mr. Miranda was at all times subsequent to the remarriage ready and willing to sell the property, but that Mrs. Miranda consistently refused to agree thereto. Mrs. Miranda testified that she repeatedly endeavored to secure Mr. Miranda's consent to sell the property but that he consistently refused to do so. Upon this same subject Mr. Miranda testified as follows:

"Q. Mr. Miranda, did your former wife, Mrs. Brown, after the execution of the property settlement agreement in 1947, often contact you in regard to selling the property and dividing the proceeds between yourself and her? A. She always try, you know. She always hand me a subpoena trying to sell the property and take her share out.

"Q. Mr. Miranda, you refused to sell the property at any time, is that correct? A. You mean sell the property at any time?

"Q. You didn't want to sell it under her terms and conditions, did you? A. And I didn't want to sell it because on account of the kids, because I wanted the kids to have that property.

"Q. In other words, you wanted to carry out the terms of the trust, isn't that right? A. Yes."

The foregoing testimony would hardly seem to support the trial court's finding that Mr. Miranda was at all times willing to sell the property after his former wife's remarriage. On the contrary, Mr. Miranda's testimony indicates that it was his purpose and desire to preserve the property intact for the children. Indeed, at the conclusion of the trial in a discussion which ensued after the trial judge suggested to the parties the advisability of their agreeing to a private sale of the property as a means of avoiding the added expense incident to a judicial sale, Mr. Miranda stated to the court: "Oh, we might as well. I wanted to save that house for the kids you know." In his brief, defendant argues that, while Mrs. Miranda was at all times desirous of selling the property, she was insistent that she receive one-half of the proceeds derived from any such sale and it was because of this that he was not willing to consent to a sale. However, even if Mrs. Miranda may have been of the view or expected that if the property was sold she would be entitled to one-half of the proceeds, it was at all times within Mr. Miranda's power to compel a sale in accordance with the terms of the settlement agreement, and the fact that he did not undertake to do so, coupled with his testimony quoted above, warrants no other inference than that he did not desire to sell. In any event, under the terms of the agreement he was obligated to pay the taxes levied against the property so long as it remained unsold and if he remained inactive and did nothing looking to the sale of the property after Mrs. Miranda's remarriage, we see no basis for charging the proceeds constituting the trust estate held for the benefit of the children with the payment of an obligation which he in any event was obligated to discharge.

Plaintiff also complains of the court's finding and judgment that the defendant is entitled to be reimbursed from the proceeds of the sale in the sum of $2,080 as and for one-half of the payments made by him for the support of his minor children subsequent to the remarriage of Mrs. Miranda. We are of the view that this contention is well taken for various reasons. In the first place, we have searched the record in vain for any evidence to the effect that defendant paid for child support during this period, the sum of $4,160 and counsel for the defendant in his brief has failed to direct our attention to any such evidence. Under the terms of the property settlement agreement defendant was obligated to pay

$25 per month or a total during this period, as we compute it, of $2,600, and the testimony of Mrs. Miranda, which is undenied by the defendant, is to the effect that he made no support payments for a period of two years. We are not unmindful of the fact as disclosed by an examination of the file in the divorce action which is in evidence, that on February 24, 1947, the amount which defendant was required to pay for the support of the children was increased to $30 per month effective March 7, 1947, and on April 9, 1954, again increased to $65 per month effective May 8, 1954, but as noted the record does not disclose what payments have been made on account thereof by the defendant. The finding as to the amount of support paid by the defendant is therefore not sustained by the evidence.

Regardless of the amount of child support that the defendant may have paid, however, the judgment insofar as it awards defendant any sum on account thereof, is erroneous. A reading of the property settlement agreement makes clear that what the parties intended thereby was that defendant should pay for the support of his children $25 per month and in the event that the property was sold, $50 per month should be paid from the proceeds of the sale to Mrs. Miranda for this purpose, one-half thereof or $25 representing defendant's interest in the property, being in lieu of the $25 which the defendant was otherwise obligated to pay by the terms of the agreement. If the property had been sold upon Mrs. Miranda's remarriage the result would have been that although defendant was thereby excused from making the monthly payment of $25, he would in effect still be contributing $25 per month for this purpose by virtue of the fact that the trust fund would each month be depleted to the extent of $50, one-half of which would be chargeable to his share. Thus, to the extent that the proceeds of the sale have not been decreased by $50 per month since Mrs. Miranda's remarriage, as would have been the case if the property had then been sold, the amount which ultimately will come to the defendant when the trust terminates upon the attainment by the children of their majority[1] has been increased.

More important, however, is the fact that independently of the terms of the property settlement agreement, defendant was obligated to make the payments for the support of his children by virtue of the provisions of the interlocutory decree

---

[1]The children will attain their majority in July, 1958, and March, 1960, respectively.

of divorce. We know of no rule of law and none has been called to our attention to the effect that defendant is entitled to reimbursement for such payments.

Plaintiff further complains of the trial court's finding and judgment that defendant is entitled to reimbursement in the sum of $1,290 "as and for one-half of the rent collected from said real property by Cross-Defendants Mary Louise Miranda and William G. Williams since the remarriage" of Mrs. Miranda. This contention also appears to be well taken. Our examination of the record discloses that the only testimony with respect to rental collected from the premises is to the effect that Mrs. Miranda collected rent therefrom in the sum of $85 per month for 11 months and that plaintiff collected rent at the rate of $35 per month for 12 months, or a total of $1,355. Mrs. Miranda testified that the rent so collected by her was used for the support of the minor children during the period when, as she testified and which testimony was not denied by the defendant, the latter made no payments for their support. In this situation defendant is not entitled to reimbursement therefor. Moreover the trial court expressly found that the defendant was not entitled to the possession of the property. In the light of this finding there is no basis for its conclusion that either plaintiff or Mrs. Miranda is accountable to defendant for the rents, issues and profits thereof. If there is any accountability therefor, it is to the trust estate and not to the defendant.

Plaintiff also complains of the allowance to the defendant in the sum of $490 as compensation for services rendered by him as trustee. The argument advanced in support of this contention is that the defendant was never a trustee and that he performed no service as such for which he is entitled to be compensated. We have in effect already disposed of this contention by our prior holding that the defendant was such trustee and that he rendered services in the protection of the trust. He was accordingly entitled to reasonable compensation for his services and the amount awarded therefor does not appear to us to be unreasonable.

### Appeal of Defendant and Cross-Complainant
### Max Miranda

In support of his appeal defendant first contends that the court erred in allowing him only one-half of the payments allegedly made by him for the support of the children subsequent to the remarriage of Mrs. Miranda. This contention

has already been disposed of in connection with our consideration of the appeal of the plaintiff and wherein we have concluded that defendant was not entitled to be reimbursed for any part of such support payments.

Defendant next complains of the provision of the judgment whereby the plaintiff is awarded the sum of $500 as and for attorney's fees in this action, and we are in agreement with this contention. It is elementary that counsel fees are not recoverable in actions either at law or in equity except where expressly allowed by statute. (*Miller* v. *Kehoe*, 107 Cal. 340, 343 [40 P. 485].) If an allowance therefor was authorized, it is· only by virtue of section 796 of the Code of Civil Procedure which in partition actions authorize the allowance of counsel fees incurred by the parties "for the common benefit." Although plaintiff's action purports to be one in partition, from its very inception it developed into a proceeding to establish plaintiff's ownership to an undivided one-half interest in the subject property free and clear of the claims of the minor children under the trust agreement. All of the efforts of plaintiff both in the trial court and upon this appeal were and have been directed to this end. It is therefore clear that such services as were rendered by counsel for the plaintiff were in the interest of plaintiff alone and not for the common benefit. As said in *Capuccio* v. *Caire* (1929), 207 Cal. 200, 208 [277 P. 475, 73 A.L.R. 8] : "It is not to be understood that in so holding we· are deciding that the cost of litigating purely controversial issues arising in such actions between parties thereto who have their own counsel and are incurring their own costs in the effort to sustain their adverse claims shall be chargeable or recoverable against the losing party or the parties to such controversy. It is evident that such was not the intent of the framers of section 796 of the Code of Civil Procedure, since it is expressly provided therein that it is only when the costs, including counsel fees entailed in said action, shall be found to have been expended for the common benefit that they shall be chargeable or recoverable by whichever of the parties, plaintiff or defendant, shall have .so expended the same."

Furthermore, as previously noted, in acting both as counsel for the plaintiff and for the minor children in this proceeding, the attorney for the plaintiff undertook to represent conflicting interests and it would be highly inequitable to impose a charge for his services upon the very trust estate which he, in the interest of the plaintiff, sought to destroy to

the detriment of the minor beneficiaries whose interests he purported to represent.

Finally defendant contends that the court erred in awarding plaintiff reimbursement in the sum of $392 for repairs made by him to the real property. These repairs consisted of a new roof, installation of a new water heater and repainting. There is no contention that the amount expended for the purposes stated is unreasonable, nor that the repairs were not required. The argument is that plaintiff having no interest in the property, was a mere volunteer and hence not entitled to be reimbursed for this expenditure. Plaintiff, however, had an interest in the property and in maintaining it and the trial court was warranted in concluding that by reason of the repairs, the value of the property was increased and that as a consequence it brought a better price upon the sale thereof. The expenditures inuring to the benefit of the trust estate, we see no good reason why the court should not have authorized reimbursement therefor.

The judgment is modified by striking therefrom the provisions directing payment to defendant and cross-complainant from the proceeds of the sale in the possession of the county clerk of the following items: $340.58 for one-half of the general and special real property taxes paid by the cross-complainant; $2,080 as and for one-half of the child support payments paid by cross-complainant; $1,290 as and for one-half of the rents collected by cross-defendants William G. Williams and Mary Louise Miranda; and also striking therefrom the provision directing the payment to plaintiff from the proceeds of the sale the sum of $500 as and for attorney's fees; as so modified the judgment is affirmed; neither party to recover costs.

Shinn, P. J., and Vallée, J., concurred.